1
2
3
4
5
6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., | CASE NO. C70-9213 RSM |
| Plaintiffs, | SUBPROCEEDING NO. 19-01 RSM |
| v. | ORDER ON PENDING MOTIONS |
| STATE OF WASHINGTON, et al., | |
| Defendants. | |

## I.      INTRODUCTION

This subproceeding is before the Court on cross-motions for summary judgment filed by each of the four tribes actively litigating this matter: the requesting parties the Swinomish Indian Tribal Community ("Swinomish"), the Tulalip Tribes ("Tulalip"), and the Upper Skagit Indian Tribe ("Upper Skagit") (collectively, the "Region 2 East Tribes") and responding party the Lummi Nation ("Lummi").  Dkt. #3.[1]  The Region 2 East Tribes sought judgment determining that "[t]he adjudicated usual and accustomed fishing places of the Lummi Nation do not include"

---

[1] Dkt. #22,063 in Case No. C70-9213RSM.  Throughout, the Court provides citations to the docket of the underlying case the first time a filing is cited.  Thereafter, citations are only to the docket of Subproceeding No. 19-01RSM.

The Court's citations are to the docket and page numbers applied by the Court's CM/ECF system, unless otherwise indicated by paragraph number or page and line numbers.

ORDER – 1

the waters east of Whidbey Island (the "Disputed Waters").[2]  *Id.* at ¶ 30.  The Region 2 East

Tribes now seek summary judgment and permanent injunctive relief.  Dkt. #73-1[3] (Swinomish);

Dkt. #55[4] (Upper Skagit); Dkt. #57[5] (Tulalip).

Lummi opposes the Region 2 East Tribes and seeks summary judgment and a ruling that

its usual and accustomed fishing grounds and stations specifically include the Disputed Waters.

Dkt. #67 (Lummi opposition);[6] Dkt. #59 (Lummi motion for summary judgment).[7]  Having

reviewed the matter, the Court finds for the Region 2 East Tribes and determines that Judge Boldt

intended to exclude the Disputed Waters from his determination of Lummi's usual and

accustomed fishing grounds and stations.

## II.    BACKGROUND

Almost one half-century ago, Judge Boldt determined Lummi's usual and accustomed

fishing grounds and stations ("U&A"), as reserved under the Treaty of Point Elliott:[8]

> 45. . . . .  The Lummis had reef net sites on Orcas Island, San Juan Island, Lummi
> Island and Fidalgo Island, and near Point Roberts and Sandy Point. . . .  These
> Indians also took spring, silver and humpback salmon and steelhead by gill nets
> and harpoons near the mouth of the Nooksack River, and steelhead by harpoons
> and basketry traps on Whatcom Creek.  They trolled the waters of the San Juan
> Islands for various species of salmon.
>
> 46.  In addition to the reef net locations listed above, the usual and accustomed
> fishing places of the Lummi Indians at treaty times included the marine areas of

---

[2]  Swinomish indicates that the five principal bodies of water within the Disputed Waters are
Skagit Bay, Port Susan, Saratoga Passage, Holmes Harbor, and Possession Sound.  Dkt. #73-1 at
2 (Dkt. #22,238 in Case No. C70-9213RSM).
[3]  The Court cites to Swinomish's corrected motion for summary judgment, filed at Dkt. #73-1
(Dkt. #22,238 in Case No. C70-9213RSM).  Swinomish's original motion for summary judgment
is filed at Dkt. #51 (Dkt. #22,200 in Case No. C70-9213RSM).
[4]  Dkt. #22,206 in Case No. C70-9213RSM.
[5]  Dkt. #22,208 in Case No. C70-9213RSM.
[6]  Dkt. #22,231 in Case No. C70-9213RSM.
[7]  Dkt. #22,210 in Case No. C70-9213RSM.
[8]  Treaty of Point Elliott, January 22, 1855, ratified March 8, 1859, and proclaimed April 11,
1859, 12 Stat. 927.

Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay.

*United States v. Washington*, 384 F. Supp. 312, 360 (W.D. Wash. 1974), *aff'd and remanded*, 520 F.2d 676 (9th Cir. 1975) (the "*Boldt Decree*") (citations omitted).

Through extensive prior litigation, this Court and the Ninth Circuit have determined that Judge Boldt intended for his expansive and general description of the "marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle" to include Admiralty Inlet on the western side of Whidbey Island and "exclude[s] the Strait of Juan de Fuca and the mouth of the Hood Canal." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 445, 451–52 (9th Cir. 2000) ("*Lummi I*"). Noting that "Admiralty Inlet 'would likely be a passage through which the Lummi would have traveled' from the Fraser River, south through the San Juan Islands, to the present environs of Seattle," the Ninth Circuit has further concluded that Judge Boldt intended to include "the waters immediately to the west of northern Whidbey Island . . . within the Lummi's U&A." *United States v. Lummi Nation*, 763 F.3d 1180, 1187 (9th Cir. 2014) (*Lummi II*). Subsequently, the Ninth Circuit expanded "the waters immediately to the west of northern Whidbey Island" to include, at least, "the waters 'northeasterly of a line running from Trial Island near Victoria, British Columbia, to Point Wilson on the westerly opening of Admiralty Inlet, bounded on the east by Admiralty Inlet and Whidbey Island, and bounded on the north by Rosario Strait, the San Juan Islands, and Haro Strait.'" *United States v. Lummi Nation*, 876 F.3d 1004 (9th Cir. 2017) ("*Lummi III*"); *Lower Elwha Klallam Indian Tribe v. Lummi Nation*, 849 F. App'x 216, 218 (9th Cir. 2021).

The Court is now tasked with determining whether the expansive and general description of Lummi U&A includes the Disputed Waters. Lummi's general position is that the Disputed Waters are so obviously contained within Judge Boldt's description of "the marine areas of

ORDER – 3

1    Northern Puget Sound" that to otherwise mention geographic anchors within the Disputed Waters

2    would be unnecessarily redundant.   Conversely, the Region 2 East Tribes maintain that the

3    omission of geographic anchors, combined with the lack of evidence of Lummi fishing or travel

4    in the Disputed Waters, clearly convey Judge Boldt's intent to omit the Disputed Waters from

5    Lummi's U&A.

### III.        DISCUSSION

6

7    **A.  Legal Standard**

8         This subproceeding invokes the Court's continuing jurisdiction under Paragraph 25(a)(1)

9    of Judge Boldt's injunction, as subsequently modified.  Dkt. #3 at ¶ 2; *Boldt Decree*, 384 F. Supp.

10   at 419, *as modified United States v. Washington*, 18 F. Supp. 3d 1172, 1213–1216 (W.D. Wash.

11   1993).[9]  Accordingly, the Court considers whether Lummi fishing within the Disputed Waters

12   would be "in conformity with [the *Boldt Decree* and] or this injunction."  *Boldt Decree*, 384 F.

13   Supp. at 419.  In doing so, the Court interprets Judge Boldt's prior orders and construes the

14   "judgment so as to give effect to the intention of the issuing court."  *Muckleshoot Tribe v. Lummi*

15   *Indian Tribe*, 141 F.3d 1355, 1358 (9th Cir. 1998) ("*Muckleshoot I*") (quoting *Narramore v.*

16   *United States*, 852 F.2d 485, 490 (9th Cir. 1988)) (internal quotation marks omitted).  The Court's

17   consideration proceeds under the two-step process established by the *Muckleshoot* trilogy of

18   cases.

19        First, the party asserting ambiguity must offer "evidence that suggests that [the U&A] is

20   ambiguous or that the court intended something other than its apparent meaning."  *United States*

21   *v. Muckleshoot Indian Tribe*, 235 F.3d 429 (9th Cir. 2000) ("*Muckleshoot III*") (quoting

22   *Muckleshoot I*, 141 F.3d at 1358) (cleaned up).  This is a more searching process than statutory

23

24   [9] Dkt. #13,599 in Case No. C70-9213RSM.

1   interpretation because "the 'language of the court must be read in the light of the facts before

2   it.'" *Muckleshoot III*, 235 F.3d at 433 (quoting *Julian Petroleum Corp. v. Courtney Petroleum*

3   *Co.*, 22 F.2d 360, 362 (9th Cir. 1927)).  Accordingly, the mere fact that a geographic term may

4   include the waters at issue does not resolve the matter.  *Id.*  Rather, the Court may consider the

5   record before Judge Boldt when he established the U&A and "may also include additional

6   evidence if it sheds light on the understanding that Judge Boldt had of the geography at the time."

7   *Upper Skagit Indian Tribe v. Washington*, 590 F.3d 1020, 1024–25 (9th Cir. 2010) ("*Upper*

8   *Skagit*") (quoting *Muckleshoot Indian Tribe v. Lummi Indian Nation*, 234 F.3d 1099 (9th Cir.

9   2000) ("*Muckleshoot II*")) (quotation marks omitted).

10          If Judge Boldt's U&A determinations are ambiguous or mean something other than their

11   apparent meaning, the moving party must then "show that there was no evidence before Judge

12   Boldt that [the responding party] fished [in the disputed waters] or traveled there in route to"

13   other portions of the responding party's U&A.  *Upper Skagit*, 590 F.3d at 1023; *see also Lummi*

14   *III*, 876 F.3d at 1010.  Conversely, summary judgment in favor of the responding party is

15   appropriate if it can establish that it fished in or traveled through the disputed waters.

16          Here, the determinations are appropriately resolved on the parties' motions for summary

17   judgment.  Summary judgment is appropriate where "the movant shows that there is no genuine

18   dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED.

19   R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are

20   those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at

21   248.

22          Neither party offers additional evidence of Judge Boldt's contemporaneous

23   understanding of geography and rely on the record before Judge Boldt, obviating factual disputes.

24   *Muckleshoot I*, 141 F.3d at 1359 (noting pretrial order providing that "the only relevant evidence

ORDER – 5

is that which was considered by Judge Boldt when he made his finding"). Because the Court's review is limited, almost exclusively, to the record before Judge Boldt and because of the practical difficulties presented by the underlying case and its numerous subproceedings, the Ninth Circuit has relaxed summary judgment strictures in the context of this case. *See Upper Skagit*, 590 F.3d at 1025 n.9. Where each party had the opportunity to augment the record with evidence of Judge Boldt's contemporaneous understanding of ambiguous terms, "a trial on the merits would reveal no additional relevant facts." *Id.* Accordingly, "the district judge, who is also the trier of fact, may resolve conflicting inferences and evaluate the evidence to determine Judge Boldt's intent." *Id.* (citations omitted).

**B. Lummi's U&A is Ambiguous**

The relevant portion of Lummi's U&A determination is "the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle, and particularly Bellingham Bay." The Court has little trouble concluding that Judge Boldt's broad use of "the marine areas of Northern Puget Sound" is ambiguous.

First, and most importantly, Lummi's U&A determination does not include any geographic anchors within the Disputed Waters for Judge Boldt's use of "Northern Puget Sound." The Ninth Circuit has previously noted the importance of geographic anchors where more general geographic terms are used. *See Upper Skagit*, 590 F.3d at 1025–26. Because the Court's inquiry must "focus[] on individual U&As, [] the fact that Judge Boldt defined 'Puget Sound' in one instance as including Skagit Bay and Saratoga Passage does not mean that references to 'Puget Sound' in other U&As always include those same areas." *Id.* at 1026. None of the geographic anchors referenced—the "Fraser River," the "present environs of Seattle," or "Bellingham Bay"—are within the Disputed Waters. While Lummi points to geographic anchors

ORDER – 6

referenced in its U&A determination which are adjacent to the Disputed Waters, as discussed further below, the simple fact remains that none are within the Disputed Waters.

<u>Second</u>, the Ninth Circuit has previously determined that the waters west of Whidbey Island served as the primary thoroughfare for tribes traveling between the Fraser River and the environs of Seattle. The conclusion was premised on the explanation of Dr. Barbara Lane—an expert witness that Judge Boldt relied upon heavily and held in high regard—"that [t]he deeper saltwater areas, the Sound, the straits, and the open sea, served as public thoroughfares, and as such, were used as fishing areas by anyone travelling [sic] through such waters." *Tulalip Tribes v. Suquamish Indian Tribe*, 794 F.3d 1129, 1135 (9th Cir. 2015) ("*Tulalip Tribes*") (citations and internal quotation marks omitted, alteration in original); *see also Lummi III*, 876 F.3d at 1010.

The Ninth Circuit has specifically held that this was true of the Suquamish traveling north:

> As indicated by the plain text of the Suquamish's U&A, the Suquamish traveled from "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River." [*United States v. Washington*, 459 F. Supp. 1020, 1049 (W.D. Wash. 1978) ("*Decision II*")]. When traveling from Vashon Island to the Fraser River, the Suquamish would have passed through the waters west of Whidbey Island, and likely would have fished there while traveling.

*Tulalip Tribes*, 794 F.3d at 1135. And the Ninth Circuit has held that this was true of Lummi traveling south:

> The nautical path that we traced in *Lummi I* from the San Juan Islands to Seattle cuts right through the waters at issue here. *See Lummi I*, 235 F.3d at 452. Indeed, the waters west of Whidbey Island are situated just north of Admiralty Inlet, which is included in the Lummi's U&A, and just south of the waters surrounding the San Juan Islands (such as Haro and Rosario Straits), which are also included in the Lummi's U&A. As we have already observed, "[*Lummi I's*] reasoning suggests that the waters immediately to the west of northern Whidbey Island would be included within the Lummi's U&A." *Lummi II*, 763 F.3d at 1187.

*Lummi III*, 876 F.3d at 1009–10 (alteration in original). The expansive wording of Lummi's U&A is ambiguous as the Court must account for Judge Boldt's heavy reliance on the preeminence of the waters west of Whidbey Island as the north/south marine thoroughfare within

ORDER – 7

Puget Sound.  Considered in this light, Lummi's U&A is ambiguous as to whether it includes or excludes the Disputed Waters.

Third, this conclusion comports with the prior decisions in this case where this Court and the Ninth Circuit have, several times, determined that Lummi's generalized U&A determination is ambiguous.  *See e.g. Muckleshoot I*, 141 F.3d at 1360 ("Judge Boldt, however, did 'specifically determine[ ]' the location of Lummi's usual and accustomed fishing grounds, albeit using a description that has turned out to be ambiguous."); *Lummi III*, 876 F.3d at 1008–09 ("All parties agree that Finding of Fact 46 is ambiguous because it does not clearly include or exclude the disputed waters."); *see also Tulalip Tribes*, 794 F.3d at 1133 ("It does not matter that the contested areas at issue here are slightly different; the finding that Judge Boldt intended something different than the plain text of the Suquamish U&A finding remains intact.").

Fourth, and as already noted, the Ninth Circuit has previously determined that the Suquamish Tribe's U&A, defined as including "the marine waters of Puget Sound from the northern tip of Vashon Island to the Fraser River including Haro and Rosario Straits," was ambiguous as to whether it included Saratoga Passage and Skagit Bay—portions of the Disputed Waters.  *Upper Skagit*, 590 F.3d at 1024; *see also Tulalip Tribes*, 794 F.3d at 1133.  The same conclusion is appropriate in this case.

Fifth, the Ninth Circuit has approved of collapsing consideration of ambiguity and consideration of the evidence before Judge Boldt where the existence of fishing or travel within the contested waters appears to be the more significant inquiry.  *See Tulalip Tribes*, 794 F.3d at 1133 (noting previous decision affirming district court's determination that U&A was ambiguous after consideration of the evidence before Judge Boldt, even where "apparent meaning" of U&A included the disputed waters at issue).  Even if the Court were to conclude that Lummi's U&A appears unambiguous, the analysis below makes clear that Lummi's U&A is, in fact, ambiguous.

Lummi's arguments that its U&A unambiguously includes the Disputed Waters is not persuasive.

Lummi first argues that applying the law of the case doctrine to this Court's order in subproceeding 05-02, which was affirmed by the Ninth Circuit Court of Appeals in *Upper Skagit*, establishes that Lummi's U&A unambiguously includes the Disputed Waters. Dkt. #59 at 14–16 (relying on *United States v. Washington*, 20 F. Supp. 3d 831, 833–35, 2007 WL 30869, at *3–5 (W.D. Wash. 2007)). Lummi seizes upon the order's statement that "in every instance in 1975 where Judge Boldt did state a definition for Puget Sound, it is a broad one which necessarily includes both Saratoga Passage and Skagit Bay." *United States v. Washington*, 20 F. Supp. 3d at 835. Relying on the broad geographical terms used by Judge Boldt, Lummi asserts that the Disputed Waters are "marine waters," are within "Puget Sound," are within "Northern Puget Sound," and are therefore within its U&A. Dkt. #59 at 14–16. Accordingly, Lummi argues that under the law of the case doctrine the Court must reach the same conclusion here—that Lummi's U&A in "the marine areas of Northern Puget Sound" includes the Disputed Waters.

But Lummi omits that the order upon which it relies ultimately held that Judge Boldt, despite broadly using "the marine waters of Puget Sound" in defining Suquamish's U&A, did *not* intend to include Saratoga Passage or Skagit Bay. *United States v. Washington*, 20 F. Supp. 3d at 841. Still further, Lummi omits, outside a footnote, that the order also explained that "in describing the individual tribes' usual and accustomed fishing areas, Judge Boldt was necessarily indicating only a portion of that broader Puget Sound, even when, as here, he used the term 'Puget Sound' without qualification."[10]  *Id.*; *see also Upper Skagit*, 590 F.3d at 1026 (holding that the

---

[10] Perhaps Judge Boldt's restriction of Lummi U&A to "*Northern* Puget Sound" was intended to define a distinct area within Puget Sound. But even then, what constitutes "*Northern* Puget Sound" would remain ambiguous.

ORDER – 9

proper inquiry "focuses on individual U&As, and the fact that Judge Boldt defined 'Puget Sound' in one instance as including Skagit Bay and Saratoga Passage does not mean that references to 'Puget Sound' in other U&As always include those same areas"). While Lummi's argument may not misstate the prior decisions in this case, it certainly paints them in a misleading light.

Of no small import, Lummi's position would have the Court dispense with the Ninth Circuit's consideration of geographic anchor points in determining the ambiguity of a tribe's U&A under the *Boldt Decree*. As the Ninth Circuit has explained,

> Judge Boldt used specific geographic anchor points in describing other tribes' U&As. . . . From this it is reasonable to infer that when he intended to include an area, it was specifically named in the U&A. In Suquamish's case, the only inclusive geographic anchor points for the term "Puget Sound" are the "Haro and Rosario Straits," which do not include or delineate the [Skagit Bay and Saratoga Passage]. That Judge Boldt neglected to include Skagit Bay and Saratoga Passage in the Suquamish's U & A supports our conclusion that he did not intend for them to be included.

*Upper Skagit*, 590 F.3d at 1025 (internal citations omitted); *see also Lummi I*, 235 F.3d at 451 (noting that Dr. Lane identified specific fishing grounds and that "it is the specific, rather than the general, evidence presented by Dr. Lane that Judge Boldt cited in support for his findings of fact regarding the Lummi's" U&A). Lummi does point to "the present environs of Seattle" and "Fidalgo Island" as geographic anchors supporting the inclusion of the Disputed Waters within "Northern Puget Sound." Dkt. #59 at 17. But, just as in Suquamish, none of these geographic anchor points are within the Disputed Waters and none establish that the Disputed Waters are within Lummi's U&A.

Further still, the Court struggles to see how Lummi's argument could logically be correct. Suquamish's U&A includes "the marine *waters* of *Puget Sound* from the northern tip of Vashon Island to the Fraser River including Haro and Rosario Straits." *Decision II*, 459 F. Supp. at 1049 (emphasis added). Despite this broad language, Judge Boldt intended to omit Skagit Bay and

ORDER – 10

Saratoga Passage from Suquamish's U&A.  *See Upper Skagit*, 590 F.3d at 1026.  Lummi's U&A, in relevant part, is more limited as it includes only "the marine *areas* of *Northern Puget Sound*." *Boldt Decree*, 384 F. Supp. at 360 (emphasis added).  Whether Judge Boldt intended to create a distinction is not clear.  But Suquamish's U&A was determined to be ambiguous as to whether it included Skagit Bay and Saratoga Passage.  The Court sees no reason that Lummi's more restrictive U&A should *un*ambiguously include the Disputed Waters, an area that includes Skagit Bay and Saratoga Passage.  If this was Judge Boldt's intent, he expressed it ambiguously.

The Court is also unpersuaded by Lummi's argument that prior decisions finding its U&A ambiguous are not binding in this case because the decisions considered ambiguity as to different portions or borders of its U&A.  Dkt. #59 at 17–18.  This argument is not consistent with the Ninth Circuit's prior decisions.  *See Tulalip Tribes*, 794 F.3d at 1133 ("It does not matter that the contested areas at issue here are slightly different; the finding that Judge Boldt intended something different than the plain text of the Suquamish U&A finding remains intact.").  Nor does the argument substantively address that the ambiguities regarding Lummi's western and southern boundaries, due to a lack of geographic anchors, similarly exists with regard to the Disputed Waters.

The Court finds Lummi's arguments that Judge Boldt unambiguously included the Disputed Waters in its U&A unpersuasive.  Rather, the Court concludes that Lummi U&A is ambiguous as to the Disputed Waters and proceeds to resolve the ambiguity by considering the evidence before Judge Boldt.

## C. The Record Does Not Evidence Lummi Travel or Fishing in the Disputed Waters

The obvious starting point at which to consider the evidence before Judge Boldt is the anthropological reports prepared by Dr. Lane.  This Court and the Ninth Circuit have consistently noted the important role that Dr. Lane's reports played in Judge Boldt's findings of fact:

> Judge Boldt found anthropological reports prepared by Dr. Barbara Lane, an expert witness, to be "highly credible" and "very helpful in determining by direct evidence or reasonable inferences the probable location and extent of" U&As. [*Decision II*, 459 F. Supp. at 1059]; *see also* [*Boldt Decree*], 384 F. Supp. at 350 (finding that Dr. Lane's reports "have been exceptionally well researched and reported and are established by a preponderance of the evidence").

*Tulalip Tribes*, 794 F.3d at 1132.[11]

### 1. Lummi Reefnetting and Traditional Fishing Grounds

In considering Lummi U&A, Dr. Lane noted, and Judge Boldt concluded, that reefnetting was a principal economic activity of the Lummi. *Boldt Decree*, 384 F. Supp. at 360 ("Reef netting was one of the two most important economic activities engaged in by [Lummi], the other being the sale of dog fish oil."); Dkt. #60-19 at 11 (Dr. Lane indicating that "reefnetting was the most important economic activity engaged in by" Lummi). Lummi reefnetting techniques allowed them to harvest unmatched quantities of salmon, providing "surpluses to trade for imported commodities," including "coiled baskets and fibers and grasses from" upriver tribes. Dkt. #60-19 at 11, 13–14.

Not surprisingly, much of Dr. Lane's reports focused on Lummi reefnetting sites and techniques. While Dr. Lane conceded that she could not pinpoint every fishing site used by the Lummi, she felt she could "indicate the general area of their traditional fishing operations and . . . designate certain sites as important or principal fishing locations." *Id.* at 28. Accordingly,

---

[11] Two of Dr. Lane's reports are of particular importance here: BARBARA LANE, ANTHROPOLOGICAL REPORT ON THE IDENTITY, TREATY STATUS AND FISHERIES OF THE LUMMI TRIBE OF INDIANS (1973) (Dkt. #60-19); and BARBARA LANE, POLITICAL AND ECONOMIC ASPECTS OF INDIAN-WHITE CULTURE CONTACT IN WESTERN WASHINGTON IN THE MID-19TH CENTURY (1973) (Dkt. #60-20). The parties have also referenced Dr. Lane's report on the Samish Indian Tribe, which partially incorporated into what is now the Lummi Nation. *See e.g.* Dkt. #73-2 (citing BARBARA LANE, IDENTITY, TREATY STATUS AND FISHERIES OF THE SAMISH INDIAN TRIBE (1975) (Dkt. #70 at 131–160)). Because the Samish report was prepared after Judge Boldt's determination of Lummi U&A and was not offered as proof of Judge Boldt's understanding of contemporary geography, the Court has not considered it.

Dr. Lane identified Lummi reefnetting "locations in the San Juan Islands, off Point Roberts, off Lummi Island and Fidalgo Island" and, most relevant here, "Langley Point on Fidalgo Island." *Id.* at 28, 29.  Included in Dr. Lane's report is a map of reefnetting stations.



ORDER – 13

*Id.* at 30.  As is evident from Dr. Lane's discussion and map, none of the sites that she identified are within the Disputed Waters east of Whidbey Island and the southernmost site is located off of Fidalgo Island's Langley Point.  The omission is more significant when considered in context with Dr. Lane's broader consideration of Lummi fishing.

In addition to identifying reefnet sites, Dr. Lane's reports focused on Lummi's "traditional" fishing grounds, all of which were located to the north and west of the Disputed Waters.  In addition to fishing at their identified reefnet sites, Lummi trolled in "the waters of the San Juan Islands for spring salmon" and relied on "river catches."  *Id.* at 12, 27.  Lummi's "[f]reshwater fisheries included the river drainage systems emptying into the bays from Boundary Bay south to Fidalgo Bay."  *Id.* at 32.  In sum, Dr. Lane indicated that Lummi "trolled for salmon in the contiguous salt waters . . ., speared them in the bays and streams of the mainland, and took them by means of weirs and traps in the rivers . . . from what is now the Canadian border south to Anacortes."  *Id.* at 29.  Dr. Lane did not identify any portion of the Disputed Waters as traditional fishing grounds for the Lummi.

The Court is not persuaded by Lummi's argument that identification of a reefnet site "off Langley Point on Fidalgo Island" was evidence of fishing or travel within the Disputed Waters.  Lummi attempts to characterize this single offshore site as the "southwest corner of Fidalgo Island" and as "near Deception Pass, the entry point from open water into Skagit Bay."  Dkt. #59 at 21.  But fishing off of Langley Point is not connected with fishing or travel in the Disputed Waters and the identification of an open water reefnet site does not support the conclusion that Lummi traveled through Deception Pass and into Skagit Bay and the Disputed Waters.  In all regards, identification of specific Lummi fishing sites remains distinct from the Disputed Waters.

Similarly, the Court is not persuaded by Lummi's reliance on Dr. Lane's summarizing conclusion that, outside of reefnet sites, Lummi utilized "fisheries in the Straits and bays from

the Fraser River south to the present environs of Seattle." *Id.* at 20 (quoting Dkt. #60-19 at 32). Lummi's reading of Dr. Lane's somewhat ambiguous conclusion is not supported by Dr. Lane's own reports, which made clear that the referenced bays and straits were the "contiguous salt waters of Haro and Rosario Straits and in the islands, . . . the bays and streams of the mainland, and . . . the rivers." Dkt. #60-19 at 29.  But as was already noted, Dr. Lane limited her broad description and indicated that "[t]he traditional fishing areas discussed thus far extended from what is now the Canadian border south to Anacortes." *Id.*  As such, Dr. Lane's references to "bays" were primarily to Bellingham Bay, Samish Bay, and Padilla Bay, all of which she had previously identified in her report.  Dkt. #60-19 at 4 ("Bellingham Bay, Lummi Bay" and "Semiahmoo Bay and Birch Bay"); *id.* at 5 ("Samish Bay, Padilla Bay and Fidalgo Island"); *id.* at 6 ("Bellingham Bay"); *id.* at 12 ("Fisherman's Bay, Lopez Island"); *id.* at 13 ("Boundary Bay"); *id.* at 26 ("Bellingham Bay"); *id.* at 29 ("Birch Bay"); and *id.* at 31 ("Bellingham Bay" and "Boundary Bay south to Fidalgo Bay").  Dr. Lane did not include the Disputed Waters within Lummi's traditional fishing grounds.

### 2.  Lummi Travel and Fishing in the Sound and Straits

As the Disputed Waters were not a part of Lummi's traditional fishing grounds as identified by Dr. Lane, Judge Boldt's inclusion of the Disputed Waters in Lummi U&A, if at all, rested upon reasonable inferences from more general evidence.  Chief among such general evidence is the uncontroverted fact "[t]hat [Lummi] travelled [sic] widely and frequently throughout the waters of the Sound and Straits." *Id.* at 31.  Similarly, while noting that it could not be considered Lummi "home territory," Dr. Lane made clear that "Lummi fisherman were accustomed, at least in historic times, and probably earlier, to visit fisheries as distant as the Fraser River in the north and Puget Sound in the south." *Id.*

ORDER – 15

Of course, in the previous line of *Lummi* cases, the Ninth Circuit relied on this general evidence as supporting the reasonable inference that in order to travel from their home territory, north of Anacortes, and the Fraser River to "Puget Sound in the south," Lummi were likely to have traveled and fished on the western side of Whidbey Island. *Lummi I*, 235 F.3d at 452 ("Admiralty Inlet consists of the waters to the west of Whidbey Island, separating that island from the Olympic Peninsula. Admiralty Inlet would likely be a passage through which the Lummi would have traveled from the San Juan Islands in the north to the "present environs of Seattle.").

Lummi argues that the Disputed Waters east of Whidbey are equally "likely to be a passage through which the Lummi traveled . . . to the 'present environs of Seattle.'" Dkt. #59 at 22–23. But the Court is not convinced that the *Lummi* cases establish the "straight-line test" that Lummi advocates. More specifically, Lummi argues that the Disputed Waters "lie[] directly between Fidalgo Island and the present environs of Seattle, both of which are within the Lummi's" U&A. *Id.* at 22. In doing so, Lummi aligns its argument with *Lummi III*'s recognition that "the waters west of Whidbey Island are situated just north of Admiralty Inlet, which is included in the Lummi's U&A, and just south of the waters surrounding the San Juan Islands (such as Haro and Rosario Straits), which are also included in the Lummi's U&A." *Lummi III*, 876 F.3d at 1010. But Lummi's argument ignores the geographic anchors that the Ninth Circuit relied upon in *Lummi III*. There, the Ninth Circuit was considering Lummi's traditional fishing grounds in the San Juan Islands and Judge Boldt's identification of fishing grounds in the present environs of Seattle. The disputed waters, the waters west of Whidbey Island were the most direct route between the two geographic anchors. The same does not hold as to the Disputed Waters as Lummi fishing off of Point Langley, not Fidalgo Island, provides the appropriate geographic anchor. And Lummi fishing off the western coast of Fidalgo Island, near Point Langley, again

ORDER – 16

places the logical path of travel to Admiralty Inlet and the present environs of Seattle through the waters west of Whidbey Island.

Further, the fact that the waters west of Whidbey Island provided the preeminent travel route cuts against, rather than supports, Lummi's conclusion that its members also traveled south through the Disputed Waters. The Ninth Circuit has already determined that Judge Boldt regarded the waters west of Whidbey Island as the main north-south thoroughfare between the environs of Seattle and the Fraser River. *Tulalip Tribes*, 794 F.3d at 1135 (noting that waters west of Whidbey Island served as a public thoroughfare and concluding that "[w]hen traveling from Vashon Island to the Fraser River, the Suquamish would have passed through the waters west of Whidbey Island"); *Upper Skagit Tribe v. Suquamish Indian Tribe*, 871 F.3d 844, 849–50 (9th Cir. 2017) (concluding "that the Suquamish traveled through the waters west of Whidbey Island and then proceeded directly north through the San Juan Islands—not east to waters off of Bellingham Bay—en route to the Fraser River"); *Lummi II*, 763 F.3d at 1187 (concluding that Lummi would have traveled south through the waters west of Whidbey Island and Admiralty Inlet to reach the present environs of Seattle). Judge Boldt's intentional inclusion of the waters west of Whidbey Island in Lummi's U&A, the primary north-south public thoroughfare and Lummi's accustomed route of travel, makes it less likely that he also intended to include the Disputed Waters as an alternative, albeit unlikely, route.[12]

---

[12] The Court does not address the Region 2 East Tribes' argument that Lummi should be judicially estopped from arguing that the Disputed Waters east of Whidbey Island are included within its U&A because of positions that Lummi took before the Ninth Circuit. There may be merit to the argument. *Compare* Dkt. #56-1 at 342 (Lummi arguing to the Ninth Circuit that the waters west of Whidbey Island must be included in its U&A because the Ninth Circuit had "never concluded that Judge Boldt intended to describe fishing grounds that were *not continuous*") *with Lummi II*, 763 F.3d at 1187 (holding that "the 'passage through which the Lummi would have traveled' from the San Juan Islands to the Admiralty Inlet would have been the waters directly to the west of Whidbey Island" and concluding that in *Lummi I* the Ninth Circuit interpreted the *Boldt Decree* "to mean that the Lummi had a continuous and unbroken U&A connecting Fraser

### 3.   The Other Evidence Relied Upon by Lummi is Speculative

Lastly, the Court addresses several parts of the record before Judge Boldt that Lummi argues is evidence of fishing or travel within the Disputed Waters.  On the whole, the Court finds the evidence overly speculative as proof of Lummi fishing or travel within the Disputed Waters and concludes that Judge Boldt intentionally omitted the Disputed Waters from Lummi U&A. *See Upper Skagit*, 590 F.3d at 1025 n.9 ("Nor, given the lack of *any* evidence of Suquamish fishing or travel in these areas, let alone fishing that was more than 'incidental' or 'occasional,' is there any basis for supposing that 'it is just as likely' that Saratoga Passage and Skagit Bay were intended to be included as that they were not.") (emphasis in original, citation omitted).

First, Lummi relies on ambiguous statements in Dr. Lane's report indicating that Lummi possessed fibers and grasses coming from upriver portions of the Skagit River.  Dkt. #60-20 at 11 (Dr. Lane concluding that "[t]he Lummi [] imported various fibers and grasses from upriver Skagit and flint from Puget Sound").  But the fact that trade between Lummi and Upper Skagit may have occurred does not evidence Lummi travel or fishing within the Disputed Waters. Lummi attempts to strengthen its argument by pointing to Dr. Lane's statement that "[p]eople living upriver on a given drainage system would normally come to the saltwater areas at the mouth of the river to obtain fish and shellfish."  *Id.* at 26.  From this, Lummi concludes that any trade with Upper Skagit necessarily occurred as a result of Lummi traveling to the mouth of the Skagit River.[13]  Perhaps, but just as equally trade between the tribes could have occurred outside

River to Seattle").  Lummi's prior continuity argument appears to necessarily exclude the Disputed Waters from its U&A as the Disputed Waters would otherwise provide a contiguous path to the present environs of Seattle.  The Court does not, however, find the record as presented adequate to make findings supporting the application of judicial estoppel.

[13] The Court notes, as well, that the Ninth Circuit has not held that evidence of travel for trade alone is sufficient to support a finding that Judge Boldt intended for the traveled waters to be included in a tribe's U&A.  *See Upper Skagit I*, 590 F.3d at 1023 (requiring Upper Skagit to "show that there was no evidence before Judge Boldt that the Suquamish fished on the east side

1    of the Disputed Waters.  The Court finds the argument speculative and will not presume that

2    Judge Boldt seized upon isolated statements in Dr. Lane's more general report on "Political and

3    Economic Aspects of Indian-White Culture Contact in Western Washington in the Mid-19th

4    Century" to reach a conclusion that she herself did not set forth and did not mention in her

5    Lummi-specific report.

6         Second, Lummi relies on the testimony of Forrest (Dutch) Kinley who testified in the

7    underlying case that he "[had] fished in Whidby [sic] Island south and into the Canadian border."

8    Dkt. #59 at 23 (quoting *United States v. Washington*, 18 F. Supp. 3d 1123, 1161 (W.D. Wash.

9    1987)).  The Region 2 East Tribes astutely point out that when Mr. Kinley's testimony was

10   offered in 1987 this Court found the testimony irrelevant as to Judge Boldt's intent because Judge

11   Boldt had not cited the testimony as a basis for his determination of Lummi's U&A.  Dkt. #63 at

12   11 (citing *United States v. Washington*, 18 F. Supp. 3d at 1162); Dkt. #73-2 at 21.  The Ninth

13   Circuit has long held that the evidence cited by Judge Boldt is the "most relevant" evidence of

14   his intent.  *Muckleshoot III*, 235 F.3d at 434.  And even so, the Court finds the evidence

15   speculative as to Lummi fishing or travel within the Disputed Waters.  The Ninth Circuit has

16   already concluded that Lummi fished and traveled in the waters west of Whidbey Island.  Mr.

17   Kinley's testimony does not establish whether he refers to fishing or travel that occurred in the

18   Disputed Waters or in the waters West of Whidbey Island.

19        Third, Lummi relies on Judge Boldt's subsequent decision concerning herring rights as

20   evidence of his intent in determining Lummi's U&A.  But the herring proceedings occurred after

21   Judge Boldt had already determined Lummi's U&A in the *Boldt Decree* and proceeded on a

---

of Whidbey Island or traveled there *in route to*" other portions of Suquamish's U&A.  Even if
Lummi traveled into the Disputed Waters to the mouth of the Skagit River, there is no evidence
that they did so while traveling to other portions of their U&A (i.e. "the present environs of
Seattle).

different record.  The Court does not find it appropriate to determine Judge Boldt's intent by referring to material that was not before him at the time of his disputed findings.

**D.  Injunctive Relief**

The Region 2 East Tribes have requested that the Court enter a permanent injunction in this matter.  However, the Region 2 East Tribes have not explained, and the Court does not find, that permanent injunctive relief beyond that provided in the underlying case is necessary.  The Court, having concluded that Judge Boldt excluded the Disputed Waters from Lummi's U&A expects that the parties will act in accordance therewith.  The Region 2 East Tribes' motions, to the extent they seek further injunctive relief, are denied and the Court's preliminary injunction is dissolved.

## IV.      CONCLUSION

The record before Judge Boldt does not evidence Lummi travel within the Disputed Waters, let alone fishing.  While it is "impossible to compile a complete inventory of any tribe's" U&A, the omission of any geographic anchors in the Disputed Waters is telling, especially in light of the bevy of geographic anchors outside of the Disputed Waters.  While the Ninth Circuit has concluded that the waters west of Whidbey Island served as the logical route of travel from Lummi fishing grounds in the north to the present environs of Seattle, the same reasoning does not hold as to the Disputed Waters.  The Court concludes that no evidence of Lummi travel or fishing within the Disputed Waters was before Judge Boldt.  At most, the evidence leaves open the possibility of infrequent and extraordinary travel into the openings of the Disputed Waters.  Judge Boldt intentionally included the waters west of Whidbey Island in Lummi U&A as the usual and accustomed thoroughfare utilized by Lummi and intentionally omitted the Disputed Waters.

ORDER – 20

Accordingly, and having reviewed the motions, the briefing, declarations and exhibits in support of the briefing, and the remainder of the record, the Court finds and ORDERS:

1. Swinomish Indian Tribal Community's Motion for Summary Judgment and Permanent Injunctive Relief (Dkt. #73-1) is GRANTED in part, as provided above.

2. Upper Skagit Indian Tribe's Motion for Summary Judgment (Dkt. #55) is GRANTED in part, as provided above.

3. The Tulalip Motion for Summary Judgment and Injunction (Dkt. #57) is GRANTED in part, as provided above.

4. Lummi Nation's Motion for Summary Judgment (Dkt. #59) is DENIED.

5. The Preliminary Injunction entered in this matter (Dkt. #42)[14] is DISSOLVED.

6. This matter is CLOSED.

DATED this 20th day of September, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

---

[14] Dkt. #22,124 in Case No. C70-9213RSM.

ORDER – 21